**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| ASETEK DANMARK A/S, | |
| Plaintiff, | |
| v. | Civil Action No. 6:21-cv-00501 |
| SHENZHEN APALTEK CO., LTD., A/K/A SHENZHEN ANG PAI TECHNOLOGY CO., LTD., and GUANGDONG APALTEK LIQUID COOLING TECHNOLOGY CO., LTD., A/K/A GUANGDONG ANG PAI LIQUID COOLING TECHNOLOGY CO., LTD., OR DONGGUAN APALCOOL, | **JURY TRIAL DEMAND** |
| Defendants. | |

**DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a), OR IN THE ALTERNATIVE TO STAY**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    Introduction ................................................................................................................ 1

II.   Background ................................................................................................................. 1

III.  Argument ................................................................................................................... 4

      A.    This case should be transferred to the Northern District of California .................. 4

          1.    This action could have been brought in the Northern District of
              California .................................................................................................... 5

          2.    This action should have been brought in the Northern District of
              California .................................................................................................... 6

              a.    The public-interest factors weigh heavily in favor of
                  transfer ......................................................................................... 6

              b.    The private-interest factors also weigh in favor of transfer ............ 9

      B.    Alternatively, this action should be stayed pending trial in California ................ 14

IV.   Conclusion ............................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adobe Inc.*,
823 F. App'x 929 (Fed. Cir. 2020) .............................................................................................9

*Affinity Labs of Tex., LLC v. Blackberry Ltd.*,
2014 U.S. Dist. LEXIS 185024 (W.D. Tex. June 11, 2014) ...........................................10, 11

*Asetek A/S et al. v. CoolIT Systems Inc.*,
N.D. Cal. Case No. 4:14-CV-02713-CW .................................................................................2

*Asetek Danmark A/S v. CMI USA, Inc.*,
N.D. Cal. Case No. 4:13-CV-00457-JST ..................................................................................2

*Asetek Danmark A/S v. CoolIT Systems Inc.*,
N.D. Cal. Case No. 3:19-CV-00410-EMC .................................................................................3

*Asetek Danmark A/S v. Corsair Gaming, Inc. et al.*,
N.D. Cal. Case No. 3:20-CV-06541-EMC .................................................................................3

*Asetek Danmark A/S v. Newegg Inc. et al.*,
N.D. Cal. Case No. 4:16-CV-07068-JST ..................................................................................3

*Asetek Holdings, Inc. v. CoolIT Systems Inc.*,
N.D. Cal. Case No. 3:12-cv-04498-EMC ..................................................................................2

*Clinton v. Jones*,
520 U.S. 681 (1997)...............................................................................................................15

*Correct Transmission LLC v. Adtran, Inc.*,
2021 U.S. Dist. LEXIS 93102 (W.D. Tex. May 17, 2021) ..............................................9, 14

*Dataquill, Ltd. v. Apple Inc.*,
2014 U.S. Dist. LEXIS 82410 (W.D. Tex. June 13, 2014) ...................................................10

*In re Dish Network LLC*,
2021 U.S. App. LEXIS 31759 (Fed. Cir. Oct. 21, 2021).................................................10, 12

*Fujitsu Ltd. v. Tellabs, Inc.*,
639 F. Supp. 2d 761 (E.D. Tex. 2009)....................................................................................13

*In re: Genentech*,
566 F.3d 1343 (Fed. Cir. 2009)..............................................................................................12

*In re Google Inc.*,
2017 U.S. App. LEXIS 4848 (Fed. Cir. Feb. 23, 2017) .........................................................14

*In re Google LLC*,
2021 U.S. App. LEXIS 30052 (Fed. Cir. Oct. 6, 2021)............................................................9

*In re Hulu, LLC*,
2021 U.S. App. LEXIS 22723 (Fed. Cir. Aug. 2, 2021) ........................................................11

*Interactive Life Forms, LLC v. Weng*,
  2013 U.S. Dist. LEXIS 193772 (W.D. Tex. Apr. 8, 2013)......................................................5

*In re Juniper Networks, Inc.*,
  2021 U.S. App. LEXIS 29036 (Fed. Cir. Sep. 24, 2021) ....................................................9

*Kilbourne v. Apple Inc.*,
  2018 U.S. Dist. LEXIS 140841 (S.D. Tex. July 27, 2018)...................................................10

*Kirsch Research & Dev., LLC v. Iko Indus., Inc.*,
  2021 U.S. Dist. LEXIS 191684 (W.D. Tex. Oct. 4, 2021) ..................................................15

*Micropairing Techs. LLC v. Toyota Motor Mfg. Tex.*,
  2021 U.S. Dist. LEXIS 190585 (W.D. Tex. Oct. 1, 2021) ..................................................13

*Monolithic Power Systems, Inc. et al. v. Meraki Integrated Circuit (Shenzhen)
  Technology Ltd. et al.*,
  U.S. Dist. Ct., W.D. Tex. Case No. 6:20-cv-00876-ADA (Nov. 5, 2021) .............................5

*In re Nintendo Co.*,
  589 F.3d 1194 (Fed. Cir. 2009).........................................................................................5

*Optimum Power Solutions, LLC v. Apple, Inc.*,
  794 F. Supp. 2d 696 (E.D. Tex. 2011) ...............................................................................13

*PHD Research Group, Inc. v. Asetek A/S et al.*,
  M.D. Fla. Case No. 6:14-cv-578-Orl-22KRS .....................................................................2

*In re Radmax, Ltd.*,
  720 F.3d 285 (5th Cir. 2013) .................................................................................4, 5, 10, 11

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ...........................................................................................4, 12, 13

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ...............................................................................................6, 9

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
  2012 U.S. Dist. LEXIS 19210 (E.D. Tex. Feb. 14, 2012) ...................................................10

**Statutes**

28 U.S.C. § 1391(c)(3)..........................................................................................................5

28 U.S.C. § 1404.................................................................................................................4, 5, 9, 12

## I.   **INTRODUCTION**

Asetek Danmark A/S ("Asetek") has been asserting its collection of liquid cooling patents for nearly a decade in the Northern District of California.  But increasingly dissatisfied with its poor outcomes in that forum—a consequence, it must be noted, of Asetek's bad patents rather than any defect in the forum itself—it now seeks to open a new front in the Western District of Texas. The Court should not countenance Asetek's blatant forum-shopping and instead send this case to the court that already has intimate familiarity with the technology, the patents, and the plaintiff. Failing that, the Court should at a minimum stay this case until a verdict is rendered in the Northern District of California's July 2022 trial of one of the only two remaining patents-in-suit.

## II.   **BACKGROUND**

Plaintiff Asetek owns a portfolio of patents for liquid-assisted cooling of computer systems. ECF 1 ¶ 1.  Defendants Shenzhen Apaltek Co. Ltd. and Guangdong Apaltek Liquid Cooling Technology Co. Ltd. (collectively, "Apaltek") are China-based manufacturers of liquid cooling products for computer hardware. *Id*. ¶¶ 3-4.  Apaltek sells products to other companies in Asia, such as Lian Li, Enermax, and Thermaltake. *Id*. ¶¶ 7-8.  Asetek sued Apaltek in this District in early May 2021. *Id*.

Asetek's complaint asserts four patents: U.S. Patent Nos. 8,240,362 (the "'362 patent"), 8,245,764 (the "'764 patent"), 10,078,355 (the "'355 patent"), and 10,599,196 (the "'196 patent"). *Id*. ¶ 1.  But the Patent Trial & Appeal Board recently issued a final judgment invalidating the asserted claims of the '355 patent, Declaration of David S. Bloch ¶ 2, Ex. A, and Asetek then disclaimed the asserted claim of the '196 patent. *Id*. ¶ 3, Ex. B.  Thus, only two patents—the '362 and '764 patents—remain. ECF 27 at 2 ("the other two patents in the Complaint will be withdrawn"); Bloch Dec. ¶ 39, Ex. LL (infringement contentions for '362 and '764 patents only).

This is the first case Asetek has filed in the Western District of Texas.  But it is not Asetek's first case.  Rather, Asetek has been asserting patents from this portfolio in the Northern District of California for almost a decade—seven times since 2012.   That is because Asetek's U.S. headquarters and wholly owned U.S. operating company are in the Northern District of California. Bloch Dec. ¶¶ 4-8, Exs. C ¶ 2, D ¶ 2, E ¶ 3, F at 1, 2-3, 7-8, and G at 2, 11.  All of the Asetek products purportedly practicing its patents funnel through that sole U.S. point of entry.

- Its first filed case asserting these patents was *Asetek Holdings, Inc. v. CoolIT Systems Inc.* ("CoolIT"), N.D. Cal. Case No. 3:12-cv-04498-EMC. Bloch Dec. ¶ 4, Ex. C.  The court proceeded through claim construction regarding the '362 and '764 patents before concluding in 2015. Bloch Dec. ¶ 9, Ex. H (*CoolIT I* claim construction order, ECF 155).

- While the first *CoolIT* case was pending, Asetek filed a second case, *Asetek Danmark A/S v. CMI USA, Inc.*, N.D. Cal. Case No. 4:13-CV-00457-JST.  That case culminated in an 11-day jury trial on the '362 and '764 patents in 2014.  Bloch Dec. ¶¶ 10-11, Exs. I (*CMI* trial minutes, ECF 218) and J (*CMI* order entering judgment, ECF 249).

- In 2014, Asetek sued CoolIT a second time, asserting a patent involving related liquid cooling technology, *Asetek A/S et al. v. CoolIT Systems Inc.*, N.D. Cal. Case No. 4:14-CV-02713-CW. Bloch Dec. ¶ 6, Ex. E (*CoolIT II* complaint, ECF 1).  That case ended in a stipulated dismissal with prejudice. *Id*. ¶ 12, Ex. K (*CoolIT II* dismissal order, ECF 30).

- At the same time, Asetek was the defendant in a declaratory judgment action in the Middle District of Florida—*PHD Research Group, Inc. v. Asetek A/S et al.*, M.D. Fla. Case No. 6:14-cv-578-Orl-22KRS—also involving the related liquid cooling technology. Asetek moved to transfer that case to the Northern District of California—successfully. *Id*. ¶¶ 7, 13, Exs. F (*PHD*, ECF 26, Asetek's motion to transfer), L (M.D. Fla. order granting

2

Asetek's motion to transfer, ECF 31).  That case ended with a stipulated dismissal. *Id*. ¶ 14, Ex. M (*PHD* N.D. Cal. dismissal, ECF 43).

- That same year, Asetek was sued by Asia Vital Components in the Eastern District of Virginia following litigation threats about the '362 and '764 patents. Bloch Dec. ¶ 15, Ex. N (Complaint, ECF 1).  Again, Asetek successfully moved the case to the Northern District of California on the ground that the Northern California courts were uniquely familiar with the patents and the underlying technology. *Id*. ¶ 16, Ex. O (E.D. Va. order granting Asetek's motion to transfer, ECF 37).  *Asia Vital* settled after claim construction. *Id*. ¶ 17, Ex. P (*Asia Vital* claim construction order, ECF 105).

- Asetek also filed *Asetek Danmark A/S v. Newegg Inc. et al.*, N.D. Cal. Case No. 4:16-CV-07068-JST, in the Northern District of California in 2014. That case asserted the same '362 and '764 patents and settled during claim construction. Bloch Dec. ¶¶ 18, 33, Exs. Q (*Newegg* judgment, ECF 56), HH (*Newegg* complaint, ECF 1).

- Asetek sued CoolIT once more—again in the Northern District of California—in 2019. The court yet again construed asserted claims of the '362 and '764 patents. *Asetek Danmark A/S v. CoolIT Systems Inc.*, N.D. Cal. Case No. 3:19-CV-00410-EMC. Bloch Dec. ¶ 19, Ex. R (*CoolIT III* claim construction order, ECF 149).

- It followed up with a complaint against CoolIT's customer, Corsair Gaming, in 2020, asserting two of the patents in the same portfolio originally asserted in this case: *Asetek Danmark A/S v. Corsair Gaming, Inc. et al.*, N.D. Cal. Case No. 3:20-CV-06541-EMC. Bloch Dec. ¶ 20, Ex. S (*Corsair Gaming* complaint, asserting the now-defunct '355 and '196 patents, ECF 1).  The Northern District of California consolidated the *CoolIT III* and *Corsair Gaming* cases, *id*. ¶ 21, Ex. T, and set them for trial in July 2022. *Id*. ¶ 22, Ex. U.

The asserted patents include the same two patents still at issue here, though we understand that Asetek has decided to drop the '764 patent in that consolidated case.

In summary, the Northern District of California has construed the patents in suit three times (*CoolIT I*, *Asia Vital*, and *CoolIT III*) and presided over one jury trial (*CMI*) involving the patents in suit—with another trial (*CoolIT III*) on one of the patents looming.  To say that the Northern District of California has a head-start in understanding the asserted patents is an understatement. It has been living with these patents and this plaintiff, serially, for more than 9 years.

Asetek engaged in this forum-shopping exercise after suffering serial defeats in the Northern District of California.  For example, Asetek originally asserted claims 1, 4, 6, 10, 14-16, 19, 25, and 30 of the '764 patent in *CoolIT III*. Bloch Dec., ¶ 36, Ex. II.  But after the Northern District of California's claim construction order concerning the '764 patent (*id.*, ¶ 19, Ex. R), Asetek dropped all ten asserted claims.  *Id.* ¶ 37, Ex. JJ. Asetek then asserted claims 1-3, 6-15, 17, and 18 of the '764 patent in the *CMI* case, but the Northern District of California again rejected Asetek's assertion. *Id.* ¶ 38, Ex. KK.  Yet even after these losses, Asetek is now asserting the same '764 patent claims 1, 2, 3, 4, 7, 8, 9, 15, 17, 18, and 30 against Apaltek. *Id.* ¶ 39, Ex. LL.

## III.   **ARGUMENT**

### A.     **This case should be transferred to the Northern District of California**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).   In a Section 1404 motion, the movant must first show that the case could have been brought in the proposed transferee district. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).  Then, the Court weighs multiple private- and public-interest factors to determine whether transfer is appropriate. *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013).  "[T]he Fifth Circuit

forbids treating the plaintiff's choice of venue as a factor in the analysis of a request to transfer." *In re Nintendo Co.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009).

Here, Asetek could have sued Apaltek in the Northern District of California.  Indeed, as it explained in the Case Readiness Status Report, "the '362 and '764 patents-in-suit have been litigated in multiple suits in the Northern District of California since 2012—including a jury trial in 2014 and ongoing litigation ... ." ECF 27 at 2.  In addition, each of the public- and private-interest factors either weighs in favor of transfer or is neutral.  Thus, the Northern District of California is "clearly [a] more convenient" forum and transfer under Section 1404(a) is appropriate.  *Radmax*, 720 F.3d at 288.

### 1. This action could have been brought in the Northern District of California

As foreign entities with no U.S. ties, the Apaltek defendants can be sued in any U.S. jurisdiction under Rule 4—assuming proper service, which is at most a ministerial barrier for a sophisticated litigant such as Asetek. 28 U.S.C. § 1391(c)(3); *Interactive Life Forms, LLC v. Weng*, 2013 U.S. Dist. LEXIS 193772, at *7 (W.D. Tex. Apr. 8, 2013).  Apaltek agrees that its products are sold in the U.S. and that it is properly subject to U.S. jurisdiction based on those sales.  *See* ECF 26 ¶ 10.  The Northern District of California can assert jurisdiction over it to precisely the same degree as can the Western District of Texas.[1]  So Asetek could have brought this lawsuit in Northern California, where it is at home and where it has been litigating these same patents since 2012. *See* ECF 27 at 2.

---

[1] To be clear, this is not the same situation the Court confronted in *Monolithic Power Systems, Inc. et al. v. Meraki Integrated Circuit (Shenzhen) Technology Ltd. et al.*, U.S. Dist. Ct., W.D. Tex. Case No. 6:20-cv-00876-ADA (Amended Order, Nov. 5, 2021).  There, the defendant reserved the right to challenge the personal jurisdiction of the Northern District of California upon transfer. *See id.* at 5.  Here, Apaltek does not challenge the district court's ability to exercise personal jurisdiction, but rather only whether it was properly served.

2.      **This action should have been brought in the Northern District of California**

a.      *The public-interest factors weigh heavily in favor of transfer*

The public-interest factors are the administrative difficulties flowing from court congestion, the local interest in having localized interests decided at home, the familiarity of the forum with the law that will govern the case; and the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).

***Local interests.***  The Northern District of California's interest in having localized interests decided at home weighs heavily in favor of transfer.  This factor "focuses on the 'factual connection' a case has with both the transferee and transferor venues; however, local interests that 'could apply virtually to any judicial district or division in the United States' are disregarded in favor of particularized local interests." *Volkswagen of Am,* 545 F.3d at 318.  "A jurisdiction where a party's principal place of business is located does have a particularized interest in the suit's outcome," so "if a court finds a jurisdiction is 'clearly the center of gravity with respect to the witnesses and parties to this case, this factor weighs in favor of transfer.'" *Id.*  As noted, Asetek's U.S. headquarters and wholly owned subsidiary are in the Northern District of California. Bloch Dec. ¶¶ 4-8, Exs. C ¶ 2, D ¶ 2, E ¶ 3, F at 1, 2-3, 7-8, and G at 2, 11.  Asetek itself has informed other courts that the Northern District of California has just such a localized interest.  For example, it told the Middle District of Florida that:

- "Asetek USA, Inc., a subsidiary of Asetek A/S, is a Delaware corporation with its principal place of business in San Jose, California." Bloch Dec. ¶ 7, Ex. F at 2-3.

- "Asetek's office in San Jose, California is its only office or business location in the United States. Asetek's San Jose office is heavily involved in Asetek's design,

research and development of its products, and provides approximately half of all of Asetek's intellectual property value." *Id*. Ex. F at 3 (citations omitted).

- "Asetek's Chief Financial Officer, its Vice-President and General Manager of the Data Center Division, its Senior Director of Marketing, and its Senior Director of Operations are all employed in Asetek's San Jose office, in addition to other individuals who work in engineering (including some with Ph.Ds), marketing, sales, and senior management positions." *Id.*

- "[T]he 'center of gravity' and 'preferred forum' for this case is in San Jose, California, where Asetek's U.S. place of business is located." *Id.* Ex. F at 7.

- "Asetek's U.S. activities are all based in San Jose, California, where Asetek maintains its only U.S. office." *Id.*

- "Asetek's California office takes a strong role in the company's product design and development, and has been responsible for approximately half of Asetek's intellectual property developed over time." *Id.*

- "Asetek's California office is also the home of four of its high-level executive officers, including the Chief Financial Officer, the Vice President and General Manager of the Data Center Division, the Senior Director of Marketing, and the Senior Director of Operation." *Id.* Ex. F at 7-8.

It told the Eastern District of Virginia the same thing:

- Asetek's U.S. headquarters are located in San Jose, California, and "Asetek's San Jose office is its only office or business location in the United States."  Bloch Dec. ¶ 23, Ex. V (Declaration of Peter Dam Madsen ¶ 3); *id.* ¶ 8, Ex. G at 16.

- "This office is involved in the design, research, and development of Asetek's products, and provides approximately half of Asetek's intellectual property." *Id*. ¶ 23, Ex. V (Madsen Dec. ¶5); *id.* ¶ 8, Ex. G at 16.

- "Most of Asetek's strategic marketing and sales decisions are made in San Jose, California." *Id.* ¶ 23, Ex. V (Madsen Dec. ¶5).

- Sales and marketing related to the patents in suit are monitored and administered out of San Jose. *Id.* ¶ 8, Ex. G at 16; *id.* ¶ 24, Ex. W (Declaration of Scott Chambers, signed in San Jose).

Of course, Asetek also has "voted with its feet" a half-dozen times, asserting these and related patents in the Northern District of California.    Thus, Northern California has a particularized interest in litigation involving Asetek.

***Familiarity with legal issues.***  While both courts are amply familiar with patent law, the Northern District of California has familiarity with *this technology* and *these patents-in-suit*.  The remaining patents in suit have been heavily litigated in California. Bloch Dec. ¶¶ 4-6, 9-12, 14, 17-22, Exs. C-E, H-K, M, P-U.  Claim terms in or related to the '362 and '764 patents have been construed by the Northern District of California at least three times. *Id*. ¶¶ 9, 17, 19, Exs. H (*CoolIT I*), P (*Asia Vital*), and R (*CoolIT III*).  The district court there has presided over an 11-day jury trial on the same '362 and '764 patents, *id*. ¶¶ 10-11, Exs. I and J (*CMI*), and is scheduled to preside over a second trial on the '362 and other related patents next year. *Id*. ¶ 21, Ex. U (*CoolIT III*). Indeed, Asetek itself has asserted that the Northern District of California is "the *only* district in the country with experience with" the '362 and '764 patents. *Id*. ¶ 8, Ex. G at 6 (emphasis added).  By contrast, this Court has not evaluated any of Asetek's patents.  This factor strongly favors transfer.

**Conflict of laws.**  Both this Court and the Northern District of California will be applying the same patent laws in the same ways. *Correct Transmission LLC v. Adtran, Inc.*, 2021 U.S. Dist. LEXIS 93102, at *16 (W.D. Tex. May 17, 2021).  But the Northern District of California is better situated to evaluate issues relating to judicial estoppel and inconsistent positions that Asetek may take, considering that it has construed the terms of the '362, '764, and related patents multiple times and presided over a trial of the same '362 and '764 patents.  The Northern District of California's familiarity with its own prior proceedings again counsels in favor of transfer.

**Court congestion.**  Multiple recent Federal Circuit decisions comparing these two jurisdictions have concluded that the "court congestion" factor is neutral. *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020); *In re Juniper Networks, Inc.*, 2021 U.S. App. LEXIS 29036, at *19 (Fed. Cir. Sep. 24, 2021); *In re Google LLC*, 2021 U.S. App. LEXIS 30052, at *17 (Fed. Cir. Oct. 6, 2021).

Thus, all of the public-interest factors are either in favor of transfer or neutral.

### b.   *The private-interest factors also weigh in favor of transfer*

The Fifth Circuit considers four private-interest factors when evaluating transfer under Section 1404(a):

(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive[.]

*Volkswagen of Am.*, 545 F.3d at 315.  Each factor favors transfer here.

**Relative ease of access to sources of proof.**  Despite the technological advances that render electronic production possible, the location of the sources of proof "continues to be an important private interest factor." *Wireless Recognition Techs. LLC v. A9.com, Inc.,* 2012 U.S. Dist. LEXIS

19210, at *10 (E.D. Tex. Feb. 14, 2012). "The Fifth Circuit has cautioned this factor remains relevant despite technological advances having made electronic document production commonplace." *Dataquill, Ltd. v. Apple Inc.*, 2014 U.S. Dist. LEXIS 82410, at *8 (W.D. Tex. June 13, 2014).

Asetek has repeatedly told other courts that it is based in the Northern District of California and possesses records there. Bloch Dec. ¶ 4-8, Exs. C ¶ 2, D ¶ 2, E ¶ 3, F at 1, 3, 7, & 8, and G at 2, 11; *see In re Dish Network LLC*, 2021 U.S. App. LEXIS 31759, at *6 (Fed. Cir. Oct. 21, 2021) (considering location of relevant electronic source of proof in directing district court to transfer a case from Western District of Texas to Colorado). By contrast, at present Apaltek is aware of nothing that suggests any source of proof in Texas. Thus, at least according to what Asetek has repeatedly told other courts, the "relative ease of access" to Asetek's own documents favors the Northern District of California. *Radmax*, 720 F.3d at 288.

And the location of party documents is not the end of the story. Asetek accuses several non-parties of importing and/or otherwise selling the allegedly infringing Apaltek products. The documents of these non-parties are entitled to significant weight in the venue analysis. *Affinity Labs of Tex., LLC v. Blackberry Ltd.*, 2014 U.S. Dist. LEXIS 185024, at *18-20 (W.D. Tex. June 11, 2014) (location of non-party's documents regarding accused products favors transfer); *Kilbourne v. Apple Inc.*, 2018 U.S. Dist. LEXIS 140841, at *7-8 (S.D. Tex. July 27, 2018). Three out of the four identified Apaltek customers (Thermaltake, Enermax, and MSI[2]) accused of selling allegedly infringing products have U.S. subsidiaries in Southern California. Bloch Dec. ¶¶ 25-26,

---

[2] MSI is not identified in the Complaint but is flagged as distributing allegedly infringing Apaltek products in Asetek's preliminary infringement contentions. Bloch Dec. ¶ 39, Ex. LL.

32, Exs. X, Y, EE.  All documents relevant to the sales of accused products are located in California or overseas. *Id.*  These documents will be more easily accessible from elsewhere in California.[3]

Thus, this factor favors transfer of this case to the Northern District of California. *Radmax*, 720 F.3d at 288 ("[T]he question is relative ease of access, not absolute ease of access.").

***Availability of compulsory process for the attendance of witnesses.***  The availability of compulsory process to secure the attendance of non-party witnesses is the next private interest factor to consider.  With regard to "the availability of compulsory process to secure the attendance of witnesses," a "[c]ourt cannot compel a non-party witness to travel 100 miles, or to travel within the same state the witness is located in, if he or she would incur substantial expense." *Affinity Labs.*, 2014 U.S. Dist. LEXIS 185024, at *14.  If multiple third-party witnesses are identified and they are overwhelmingly located within the subpoena power of only the transferee venue, "this factor favors transfer even without a showing of unwillingness for each witness." *In re Hulu, LLC*, 2021 U.S. App. LEXIS 22723, at *10 (Fed. Cir. Aug. 2, 2021) (citation omitted).  While it is too early to know the identities and locations of all the non-party witnesses, many appear to be located within the Northern District of California's subpoena range but not the range of the Western District of Texas.  For example, one key third-party witness, David Garcia (Vice President & General Manager at Asetek, 2009-2015), likely has

---

[3] Indeed, under *Micropairing Techs.*, Asetek's emphasis (ECF 1 ¶¶ 7-8) on Thermaltake, Enermax, MSI Computer Corp. (MSI's U.S. branch), and Newegg—all located in the Central District of California—would support transfer to the Central District as an alternative to both the Western District of Texas and the Northern District of California.  But Asetek's own repeated recourse to the Northern District of California courts tips the scales in favor of that venue instead.

intimate knowledge about Asetek's marketing, sales, and manufacturing plans and works in Sunnyvale, California. Bloch Dec. ¶ 27, Ex. Z.  And at least four other former members of Asetek's senior management—also probably important witnesses—appear to be located in the San Francisco Bay Area. *Id*. ¶¶ 28-29, 33, 34, Exs. AA (Sam Szteinbaum, Asetek Chairman, 2009-2018), BB (Stephen Empedocles, Asetek director of business development, 2012-2017), FF (Monem Alyaser, VP Applications Engineering & Business Development, 2007-2009), GG (David Fisher, Board Observer, 2010-2013).

This factor thus tips in favor of the Northern District of California.

***Convenience of attendance for willing witnesses.***  "The convenience of the witnesses is probably the single most important factor in the transfer analysis." *Genentech*, 566 F.3d at 1343 (internal citation omitted); *Dish Network*, 2021 U.S. App. LEXIS 31759, at *5.  This factor is analyzed giving broad consideration to all potential material and relevant witnesses, irrespective of their centrality to the issues raised in the case. *Genentech*, 566 F.3d at 1343 ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary").

The Fifth Circuit has adopted a 100-mile rule to assist with the analysis of this factor. *Volkswagen AG*, 371 F. 3d at 204-05.  When the distance between an existing venue for trial and a proposed venue under §1404(a) is more than 100 miles, the significance of inconvenience to witnesses increases in proportion to the additional distance to be traveled. *Id.* at 205.  The 100-mile rule thus favors transfer when the proposed transferee venue is a shorter average distance from witnesses than the transferor venue. *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 766 (E.D. Tex. 2009).  Importantly, when no potential witnesses are residents

of the forum state, the fact that the court may nevertheless be a "centralized location for all witnesses" cannot rebut factors favoring convenience elsewhere. *Optimum Power Solutions, LLC v. Apple, Inc.,* 794 F. Supp. 2d 696, 702 (E.D. Tex. 2011).

Defendant Apaltek is in China (ECF 1 ¶¶ 3-4),[4] the three customers identified in the Complaint (*id.* ¶¶ 7-8) are in Taiwan, and the other sellers and/or distributors (*id.* ¶ 8) are in Southern California (Newegg), Washington (Amazon), and Arkansas (Wal-Mart).  Notably, one such customer (Newegg) already has been sued by Asetek in the Northern District of California.  Bloch Dec. ¶ 18, Ex. Q.  Several of the identified customers (Thermaltake, Enermax USA, and MSI; *id.* ¶¶ 25-26, 32, Exs. X, Y, EE) have U.S. subsidiaries or offices in Southern California.  *None* of these entities are based in the Western District of Texas – Waco Division—and only one of them is in the same time zone.  Most of the identified entities are dotted up and down the West Coast, and Asetek's own U.S. subsidiary is in the Northern District of California.  Thus, the Northern District of California is more convenient for the vast majority of the potential witnesses, especially for those non-party witnesses located or having offices on the West Coast.  *Micropairing Techs. LLC v. Toyota Motor Mfg. Tex.*, 2021 U.S. Dist. LEXIS 190585, at *9 (W.D. Tex. Oct. 1, 2021) (Albright, J.) ("Courts properly give more weight to the convenience of non-party witnesses than to party witnesses") (citation omitted).

This factor, too, favors the Northern District of California.  *See In re Google Inc.*, 2017 U.S. App. LEXIS 4848, at *13 (Fed. Cir. Feb. 23, 2017) (California, not Texas, was the proper

---

[4] Shanghai is 6138 miles from San Francisco and 7417 miles from Waco. Bloch Dec. ¶¶ 30-31, Exs. CC-DD.

venue where "the vast majority of Google's employees—in particular those responsible for projects relating to the accused products—work and reside in the Northern District").

    ***All other practical problems.***  With regard to "other practical problems that make trial of a case easy, expeditious and inexpensive," this factor favors transfer when most witnesses are in or closer to the transferee forum, and the plaintiff has no presence in the district where it filed the complaint. *Correct Transmission*, 2021 U.S. Dist. LEXIS 93102, at *14.

    As discussed above, it seems that most witnesses in the U.S. reside in California or at least the West Coast.  No party has a physical presence in Texas.  Although Asetek filed its lawsuit here, the Fifth Circuit "forbids treating the plaintiff's choice of venue as a factor in the analysis of a request to transfer." *Correct Transmission*, 2021 U.S. Dist. LEXIS 93102, at *14.

    Thus, all of the private-interest factors favor transfer.

* * *

    Because the relevant public and private interest factors clearly favor transfer and Texas's relation to this action is tenuous, the Court should transfer this action to the Northern District of California in the interest of justice, for judicial economy, and for the convenience of the witnesses, including many non-parties.

### B.    Alternatively, this action should be stayed pending trial in California

    Alternatively, the Court should stay this action pending trial on the patents-in-suit in California. "The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997).  In considering a stay request, it should evaluate (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *Kirsch*

14

*Research & Dev., LLC v. Iko Indus., Inc.*, 2021 U.S. Dist. LEXIS 191684, at *5 (W.D. Tex. Oct. 4, 2021) (Albright, J.).  Each of these factors favor a stay.

      ***Status of discovery and trial.***  This case is in its infancy.  There has been no discovery to date and no trial date has been set.  By contrast, the pending *CoolIT III* case is set for trial in 8 months. Bloch Dec. ¶ 22, Ex. U.  This factor favors a stay.

      ***A stay will simplify the issues in this case.***  The *CoolIT III* case involves the same patents asserted here.  Within the next 8 months, a jury in Northern California will determine whether the '362 patent is valid and infringed.  A ruling against Asetek's patent will of course simplify this case; and even a ruling in Asetek's favor will shed light on issues of infringement, damages, and prior art.  This, too, favors a stay.

      ***No prejudice to Asetek.***  Lastly, a stay will not prejudice Asetek.  As noted, this case is in its infancy.  Asetek did not seek a preliminary injunction.  To the extent it prevails at trial, it will be entitled to money damages.  Courts have repeatedly found no undue prejudice unless the patentee makes a specific showing beyond the delay necessarily inherent in any stay. *Kirsch Research*, 2021 U.S. Dist. LEXIS 191684.  Thus, the stay will not prejudice the plaintiff.

## IV.   <u>CONCLUSION</u>

      As Asetek itself explained to the Court in the Case Readiness Status Report, "[t]he '362 and '764 patents-in-suit have been litigated in multiple suits in the Northern District of California since 2012—including a jury trial in 2014 and an ongoing litigation involving the same counsel ... that represents Defendant Apaltek in this action." ECF 27 at 2.  For precisely those reasons, this Court should transfer this case to the Northern District of California.  Barring that, it should at least stay the case pending the outcome of *CoolIT III*, the California case asserting the same patent.

Dated: November 12, 2021          Respectfully submitted,

                                  **GREENBERG TRAURIG LLP**

                                  */s/ C. Mark Stratton*
                                  C. Mark Stratton
                                  Texas Bar No. 19359200
                                  Email: strattonm@gtlaw.com
                                  Janis E. Clements
                                  Texas Bar No. 04365500
                                  Email: clementsj@gtlaw.com
                                  Joseph W. Shaneyfelt
                                  Texas Bar No. 24105406
                                  Email: shaneyfeltj@gtlaw.com
                                  GREENBERG TRAURIG, LLP
                                  300 West 6th Street, Suite 2050
                                  Austin, Texas 78701
                                  Tel: (512) 320-7200
                                  Fax: (512) 320-7210

                                  Kyle D. Chen (*admitted pro hac vice*)
                                  Email: kchen@gtlaw.com
                                  **GREENBERG TRAURIG, LLP**
                                  1900 University Ave, Fl 5
                                  Palo Alto, CA 94303-2283
                                  Tel: (650)-289-7887
                                  Fax: (650)-328-8508

                                  *ATTORNEYS FOR DEFENDANTS*
                                  Shenzhen Apaltek Co., Ltd., a/k/a Shenzhen Ang
                                  Pai Technology Co., Ltd., and Guangdong Apaltek
                                  Liquid Cooling Technology Co., Ltd., a/k/a
                                  Guangdong Ang Pai Liquid Cooling Technology
                                  Co., Ltd., or Dongguan Apalcool

## **CERTIFICATE OF CONFERENCE**

I, C. Mark Stratton, conferred with counsel for the Plaintiff in this matter on November 12, 2021. Counsel for the Plaintiff has advised that they are opposed to this motion.

*/s/ Mark Stratton*
Mark Stratton

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of November, I caused a true and correct copy of the foregoing document to be filed with the Court's CM/ECF system and thus served on all parties with counsel of record.

/s/ Mark Stratton
Mark Stratton