IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **ASETEK DANMARK A/S,**<br>*Plaintiff*<br><br>-vs-<br><br>**SHENZHEN APALTEK CO., LTD.,**<br>**GUANGDONG APALTEK LIQUID COOLING**<br>**TECHNOLOGY CO., LTD.,**<br>*Defendants* | § § § § § § § § § § | **W-21-CV-00501-ADA** |

## MEMORANDUM OPINION AND ORDER

Came on for consideration Defendants Shenzhen Apaltek Co., Ltd. and Guangdong Apaltek Liquid Cooling Technology Co., Ltd.'s (collectively, "Defendants" or "Apaltek") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), or in the Alternative to Stay (the "Motion"). ECF No. 30. Plaintiff Asetek Danmark A/S ("Plaintiff" or "Asetek") filed its Response (ECF No. 37) and Apaltek its Reply (ECF No. 45). After careful consideration of the parties' briefs and the applicable law, the Court **GRANTS** Apaltek's Motion.

### I.  FACTUAL BACKGROUND

Plaintiff Asetek filed its complaint on May 14, 2021 against Apaltek alleging infringement of four patents: U.S. Patent Nos. 8,240,362 (the "'362 patent"), 8,245,764 (the "'764 patent"), 10,078,355 (the "'355 patent"), and 10,599,196 (the "'196 patent") (collectively "the Patents-in-Suit"). ECF No. 1 ¶ 1. Asetek alleges direct and indirect infringement, as well as willful infringement of the Patents-in-Suit. *Id.* ¶¶ 16, 24, 25, 27, 31, 39, 40, 42, 46, 55, 56, 58, 62, 70, 71, and 73. Of the original four patents that were asserted, two remain: the '362 and '764 patents. ECF No. 27 at 2.

The '362 and '764 patents have been the product of extensive litigation in the Northern District of California (the "NDCA").[1] Asetek has both filed cases asserting these patents in the NDCA and sought transfer to the NDCA in response to declaratory judgment actions filed elsewhere, including in the Middle District of Florida and Eastern District of Virginia. Upon filing a complaint in this District, Defendant Apaltek timely sought transfer to the NDCA.

## II.     LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

Defendants should expect and accept some inconvenience when haled into Court. *Def. Distributed v. Bruck*, No. 21-50327, 2022 WL 984870, at *11 (5th Cir. Apr. 1, 2022). "Assuming that jurisdiction exists and venue is proper, the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer. In other words, the standard is not met

---

[1] *See Asetek Holdings, Inc. v. CoolIT Systems Inc.* ("CoolIT"), N.D. Cal. Case No. 3:12-cv-04498-EMC (concluding after the claim construction order); *Asetek Danmark A/S v. CMI USA, Inc.*, N.D. Cal. Case No. 4:13-CV-00457-JST (ending in a jury trial with an award of damages in favor of Asetek); *Asetek A/S et al. v. CoolIT Systems Inc.*, N.D. Cal. Case No. 4:14-CV- 02713-CW (ending in a stipulated dismissal with prejudice); *PHD Research Group, Inc. v. Asetek A/S et al.*, M.D. Fla. Case No. 6:14-cv-578-Orl-22KRS (transferred from M.D. Fla. to the NDCA and ending in a stipulated dismissal); *Asetek Danmark A/S v. Newegg Inc. et al.*, N.D. Cal. Case No. 4:16-CV-07068-JST (settling during claim construction); *Asetek Danmark A/S v. CoolIT Systems Inc.*, N.D. Cal. Case No. 3:19-CV-00410-EMC (consolidated with another case for trial); *Asetek Danmark A/S v. Corsair Gaming, Inc. et al.*, N.D. Cal. Case No. 3:20-CV-06541-EMC (consolidated with another case and set for trial in July).

by showing one forum is more likely than not to be more convenient, but instead the party must adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice." *Id.*

The preliminary question under Section 1404(a) is whether a civil action "might have been brought" in the transfer destination venue. *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *Volkswagen II*, 545 F.3d at 314. The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314–15. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect

3

for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *Id.* While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

### III.   DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the Northern District of California. Apaltek asserts that this case could have been brought in the NDCA because it is a foreign entity with no ties to the United States and can therefore be sued in any jurisdiction, assuming proper service. ECF No. 30 at 5. "Apaltek agrees that its products are sold in the U.S. and that it is properly subject to U.S. jurisdiction based on those sales." *Id.* Asetek does not dispute this contention. *See generally*, ECF No. 37 at 2. This Court finds that venue would have been proper in the NDCA had Asetek filed this case there. Thus, the Court proceeds with its analysis of the private and public interest factors to determine if the NDCA is clearly more convenient than the Western District of Texas ("WDTX").

**A.   The Private Interest Factors**

***i.   The Relative Ease of Access to Sources of Proof***

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases

in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d 1388, 1345 (Fed. Cir. 2009)). However, this factor "requires an actual showing of the existence of relevant sources of proof, not merely an expression that some sources likely exist in the prospective forum." *Def. Distributed v. Bruck*, 2022 WL 984870, at *11.

Apaltek argues that this factor favors transfer because Asetek has consistently told other courts its records may be found in the NDCA. ECF No. 30 at 10. Additionally, three of the four identified Apaltek customers maintain domestic subsidiaries in Southern California. *Id.* From Apaltek's perspective, all relevant documents are found either in California or overseas. None are in Texas.

Asetek contends that Apaltek has not met its burden, particularly because it "does not identify any of its own documentary evidence in the NDCA." ECF No. 37 at 8. Per Asetek, this is a major failure as "the bulk of the relevant evidence usually comes from the accused infringer." *In re Apple Inc.*, 979 F.3d at 1340. Asetek also rebuts Apaltek's references to prior litigation positions and clarifies that the vast majority of Asetek's business shifted to Denmark in 2014-2016. ECF No. 37 at 8. Instead, Asetek's relevant documents allegedly are stored in the cloud and accessible from anywhere. Asetek notes that Apaltek fails to identify any relevant physical evidence or documents presently stored in the NDCA, nor evidence stored *only* on the laptops of the five Asetek USA employees who reside in California. *Id.* at 9. Asetek further responds regarding the non-party documents. First, the subsidiaries are not in the NDCA and are therefore not relevant to the transfer analysis. Second, Apaltek fails to demonstrate with particularity that any relevant

documentary evidence is in Southern California. And last, Apaltek fails to identify documentary evidence in the custody of the three third-parties that could not transfer electronically.

The arguments presented by both parties emphasize how non-sensical this factor has become. Indeed, electronic documents are the majority of the focus in patent litigation, and such documents can be accessed from anywhere. Regardless, the factor remains intact with a focus on the physical location of the sources of proof. Here, neither party points to concrete sources of proof in either forum. Defendant grasps at physical documents referenced in Mr. Hamill's deposition testimony, but the testimony highlights the focus on a physical presence of documents entirely divorced from the relevance to the case.

> Q. Do you recall any file cabinets or loose papers?
> A. Yes.
> Q. I assume you don't remember what those papers were, though?
> A. File cabinets specifically.
> Q. Okay. Okay. Do you know the contents of that file cabinet?
> A. No.
> Q. Might be full of papers, might be dead empty?
> A. Correct.

ECF No. 45-2, 23:21-24:5. *See also id.* at 25:21-26:2, 332-10, 34:23-25 (asking nearly identical questions and garnering nearly identical responses). First and foremost, the existence of filing cabinets or loose papers has no bearing on this factor, without more. This factor is not solely about the physical presence of irrelevant papers or documents. In fact, that is derivative of the purpose of this factor—to identify *sources of proof*. Loose leaf papers with unknown contents are not sources of proof and are therefore given no weight.

The prior litigation statements, although reflective of Asetek's involvement in the NDCA previously, carry little weight in this factor because the landscape has since shifted with Asetek's reorganization. Additionally, the third-parties are located outside of both forums and they have little to no impact on this analysis. *See In re Juniper Networks, Inc.*, 14 F. 4th 1313, 1321 (Fed.

Cir. 2021) ("What matters is the relative access to sources of evidence *in the two competing forums*.") (emphasis added). Last, the unidentified loose papers and file cabinets in the transferee forum are irrelevant as they are untethered to the facts of this case and provide zero evidence. This factor is neutral.

### ii.     *The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, No. 6:18-cv-00372, 2019 WL 4743678 at *14 (citing *Volkswagen II*, 545 F.3d at 316); *see also In re Juniper*, 14 F.4th 1313, 1316 (Fed. Cir. 2021) ("the private factors are . . . (2) the availability of compulsory process to secure the attendance of *non-party witnesses* whose attendance may need to be compelled by court order…") (emphasis added).

Apaltek acknowledges the infancy of the case but argues that many non-party witnesses appear to be located within the NDCA and not the WDTX. ECF No. 30 at 11. Specifically, Apaltek points to David Garcia, the Vice President & General Manager at Asetek from 2009-2015. Apaltek argues Mr. Garcia likely has knowledge about Asetek's marketing, sales, and manufacturing plans. He is located in Sunnyvale, California. Apaltek points to four other former members of Asetek's senior management team, all of whom are located in the NDCA. *Id.* at 12. Those potential witnesses include Sam Szteinbaum, Stephen Empedocles, Monem Alyaser, and David Fisher, each of which started no earlier than 2007 and left Asetek no later than 2018. *Id.*

7

Asetek responds that this factor is neutral. Asetek points to this Court's prior opinions which discourage "cherry-picking witnesses," *Ecofactor, Inc. v. Ecobee, Inc.*, No. 6:20-cv-00078-ADA, 2021 WL 1535535, at *4 (W.D. Tex. Apr. 16, 2021), and providing "a litany of prior art witnesses" without an explanation of their relevance, *Open Text Corp. v. Alfresco Software, Ltd.*, No. 6:20-cv-00928-ADA, Slip Op, at *11 (W.D. Tex. Nov. 22, 2021). Asetek further argues that Apaltek gives no reason for why deposition testimony could not be used at trial. ECF No. 37 at 11.

In reply, Apaltek notes that Mr. Dipak Rao, although willing to testify in Waco, is more conveniently situated to attend trial in the NDCA. Again, Apaltek points to the several board members that remain in the NDCA to emphasize them as "people with discoverable information dating back to 2010-2012, when the patents-in-suit were being applied for and issued." ECF No. 45 at 4. Last, Apaltek makes a passing reference to domestic witnesses from Apaltek's primary customers that are located in California. *Id.*

The Court finds this factor to be neutral.[2] Apaltek identifies five non-party witnesses from Asetek's management team but does not indicate with specificity information they possess that cannot otherwise be obtained from those that have testified previously. *See* ECF No. 30 at 12 ("also probably important witnesses"). Moreover, given Asetek's litigation history, the absence of a reference to these employees in the prior or upcoming trial in the NDCA indicates that they are not potential witnesses. For the purposes of its briefing, Apaltek benefits from Asetek's robust litigation history in the NDCA. But that benefit is also countered by a record of who was *actually* involved in the prior trials. Such a record is a compelling indication to this Court of what to expect in this case. Thus far, the record indicates a slim list of witnesses, not including those referenced

---

[2] The Court only analyzes witnesses that are unwilling or have not indicated willingness under this factor. Accordingly, analysis of Mr. Rao falls under the "willing witness" factor.

by Apaltek.[3] On the other hand, no witnesses are identified in the WDTX. Because no witnesses with specific or relevant knowledge are located in either forum, this factor is neutral.

### iii. The Cost of Attendance and Convenience for Willing Witnesses

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d at 1342. When analyzing this factor, the Court should consider all potential material and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 U.S. Dist. LEXIS 152438, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor or inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). The Federal Circuit has stated that courts should not apply the rule "rigidly" in some cases where witnesses would be required to travel a significant distance no matter where they testify. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). In essence, the Federal Circuit has found that time away from an individual's home is a more important metric than distance. *Id.*

Apaltek resides in China, three of its customers are in Taiwan, and other sellers and/or distributors are in Southern California. ECF No. 30 at 13. None of the relevant entities are in the WDTX. *Id.* Asetek responds that its key witness, COO John Hamill, lives near Austin, TX. ECF No. 37 at 11. The other potential witness is Asetek's CEO, André Eriksen, who resides in

---

[3] This is rather consistent with the Court's own experience in handling trials. Witness lists tend to be very large, but those actually called to the stand are entirely predictable case after case.

9

Denmark. *Id.* Asetek's cited evidence indicates that the flight time from Denmark to Austin or San Francisco differs by a mere ten minutes. Asetek also explains that, in the last jury trial, André Eriksen was the only Asetek witness who testified at trial. *Id.* at 12. For the case at hand, Asetek posits that Mr. Hamill and Mr. Eriksen are the only likely Asetek witnesses. Asetek further counters the travel Apaltek witnesses will endure by stating that the difference in a few hours does not tip the balance in favor of transfer when the witnesses will be away from their homes for an extended period of time regardless of the forum. *Id.* at 13. Last, Asetek questions the relevance or willingness of the third-party witnesses that Apaltek references. In any case, Asetek notes that flights from Los Angeles to San Francisco are only slightly more convenient than flights from Los Angeles to Austin. *Id.*

Apaltek's reply states that both of the Asetek employees that work from home offices in Texas have previously been deposed in the San Francisco Bay Area. Furthermore, Apaltek emphasizes that multiple Northern California-based witnesses were deposed in prior cases and have been identified by Asetek as having relevant knowledge. Apaltek dismisses Asetek's proposed witness list as self-serving.

Only one likely relevant witness resides in the WDTX—Mr. Hamill. He did not testify at the prior jury trial. Yet, it is no surprise to this Court that Plaintiff now expects to call him as a witness in the upcoming trial in the NDCA, and in this case. And despite Apaltek's allegations of a self-serving declaration, that is an underlying expectation in transfer motions. Needless to say, the Court seeks to distinguish truly relevant self-serving declarations from wholly-manipulative self-serving statements in its discretionary review. Here, Mr. Hamill is given weight as a more-than-likely witness.

Mr. Rao, although willing, is not as likely to testify. Nothing indicates he was involved in prior litigation or would be substantively involved in the instant litigation. Yet, Asetek notes that he would be willing to testify in Waco. Such an assertion is worthy of weight even if Asetek believes he is an unlikely witness. *See* ECF No. 37 at 12, n.5. Mr. Rao resides in San Jose making the NDCA a more convenient forum.

Apaltek's passing reference to third-parties throughout California is far too vague for this Court to digest in its analysis of this factor. For witnesses residing abroad, the NDCA is a slightly more convenient forum. The Fifth Circuit adheres to the 100-mile rule, but any alleged convenience between forums is tempered by associated costs and required travel regardless of the forum. Here, Plaintiff's evidence indeed indicates that travel from Denmark to the NDCA is less expensive than to the WDTX. *Compare* ECF No. 37-11 (twelve flights to San Francisco, starting at $891) *with* ECF No. 37-12 (two flights to Austin, each $1951). For witnesses travelling from China and Taiwan, the 100-mile rule favors transfer as the NDCA is closer. But such a finding's weight is reduced because the potential witnesses would be forced to travel abroad regardless of the forum.

The Court notes the prior cases litigated in the NDCA indicate it is likely a convenient forum, particularly given Asetek's previous requests to transfer to the NDCA. Arguably, the Court can infer that many of the relevant witnesses reside there or are able to conveniently testify in the NDCA. *See* ECF No. 45 at 4 ("Yet multiple Northern California-based witnesses were deposed in prior cases and have been identified by Asetek as having relevant knowledge."). However, Defendant carries the burden to show that the relevant witnesses are in the transferee forum. Finding no direct evidence, the weight the Court places on such an inference can only go so far. Additionally, as Asetek notes in its response, "[i]n the prior Asetek cases, neither Asetek nor any

11

of the defendants called third-party witnesses to trial, and it is [*sic*] not likely either party will do that in this case." ECF No. 37 at 13.

On balance, a single, more-than-likely witness resides in the WDTX. Rao, a less-than-likely witness resides in the NDCA. Nearly all, if not all, foreign witnesses would find travel to the NDCA to be slightly more convenient. And multiple "Northern California-based witnesses were deposed in prior cases and have been identified by Asetek as having relevant knowledge." The Court finds that this factor weighs slightly in favor of transfer.

>    *iv.   All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive*

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. Apaltek argues "that most witnesses in the U.S. reside in California or at least the West Coast" and that "[n]o party has a physical presence in Texas." ECF No. 30 at 14. In its reply, Apaltek further notes that "[m]ultiple courts have transferred Asetek cases to the Northern District of California at Asetek's request." ECF No. 45 at 4. Apaltek posits that Asetek's many cases may create estoppel and related issues. *Id.* at 5. For example, Apaltek notes that since Asetek's Response was filed, the NDCA "allowed the defendants in *CoolIT* to add defenses of collateral and judicial estoppel because the district judge recognized Asetek had taken inconsistent infringement positions in *CoolIT* and another case, *CMI USA*." *Id.*

Asetek argues that witnesses are in the WDTX and that other potential witnesses are in China or Denmark, such that travel to the NDCA is not clearly more convenient than to the WDTX. Asetek therefore requests the Court respect its choice of venue and find this factor to be neutral. Asetek also argues, though under a different factor, that judicial efficiency is not guaranteed upon transfer. ECF No. 37 at 5.

The Court finds this case to be similar to the facts expressed in *In re Apple Inc.*, wherein the Federal Circuit found that overlapping issues in the transferee forum consequently favor transfer. 979 F.3d at 1344 ("[I]t is beyond question that the ability to transfer a case to a district with numerous cases involving some overlapping issues weighs at least slightly in favor of such a transfer."). The same applies here. This factor strongly favors transfer.

**B. The Public Interest Factors**

    ***i.   Administrative Difficulties Flowing from Court Congestion***

This factor considers "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d at 1347. In this analysis, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

Apaltek's position is that this factor is neutral given last year's Federal Circuit decisions comparing the WDTX and NDCA. ECF No. 30 at 9; *see also In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020); *In re Juniper Networks, In.*, 2021 U.S. App. LEXIS 29036, at *19 (Fed. Cir. Sep. 24, 2021); *In re Google LLC*, 2021 U.S. App. LEXIS 30052, at 17 (Fed. Cir. Oct. 6, 2021).

Asetek counters that a case-by-case analysis is required and that it should focus on the facts existing at the time of the filing of the suit. ECF No. 37 at 7 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (motions for transfer are to be adjudicated according to an "individualized, case-by-case consideration of convenience and fairness") (internal citation and quotation marks omitted); *EMC Corp.*, 501 F. App'x at 976 (motions to transfer are to be decided based on "the situation which existed when suit was instituted")). Asetek also seeks to distinguish the blanket finding of neutrality regarding this factor given the language in each of the Federal

Circuit opinions. Specifically, Asetek states *Juniper* is not applicable "because that decision was for a district court case filed in the WDTX in September 2020." ECF No. 37 at 7. But, the "relevant time period *for this case* is May 2021, when this case was filed, and both per-judge caseload and time-to-trial statistics around May 2021 show that the NDCA is more crowded and slower to trial than the WDTX." *Id.* (emphasis in original). Asetek also argues that *Adobe* is different because the Federal Circuit found that the "'record' does not 'demonstrate an appreciable difference in docket congestion between the forums.'" *Id.* (quoting *Adobe*, 823 F. App'x at 932). Additionally, Asetek states that the Federal Circuit's decision in *Google* is different because the Federal Circuit "rejected the district court's decision because it was 'not premised on a difference in docket congestion between the forums, …[but instead on the assertion that] establishing a new schedule with a new presiding judge would cause greater delay.'" *Id.* (quoting *Google*, 2021 WL 4592280, at *6).

Asetek provides statistical support for its contention that the WDTX is faster to trial than the NDCA—"less than two months before this case was filed, the WDTX had an average of 697 pending cases per judgeship while the NDCA had 955," and "about a month after the present suit was filed, the WDTX had 749 pending cases per judgeship while the NDCA had 1,011." ECF No. 37 at 7–8. For time to trial, "in the last five years the actual average time to verdict in patent cases, a close proxy for the time to trial, is only 729 days in the WDTX as compared to 1,449 days in the NDCA." *Id.* at 8.

Apaltek provides no statistical counter, but again relies on the Federal Circuit's opinions finding that the courts in the NDCA are not comparatively more congested than the WDTX. ECF No. 45 at 2. Per Apaltek, "May 2021 was not the exception to a rule that the Federal Circuit has been emphasizing since mid-2020." *Id.*

As noted by Asetek, the analysis is fact specific and evolving. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. at 29 (motions for transfer are to be adjudicated according to an "individualized, case-by-case consideration of convenience and fairness") (internal citation and quotation marks omitted); *EMC Corp.*, 501 App'x at 976 (motions to transfer are to be decide based on the "situation which existed when suit was instituted"). Given the statistics provided in the Plaintiff's briefing, and lack thereof from Defendants, the Court finds that this case would likely reach trial faster in this forum compared to the transferee forum.[4] Thus, this factor weighs slightly against transfer. Yet, this factor is "the most speculative" and is given less weight. *In re Genentech, Inc.*, 566 F.3d at 1347.

### ii. Local Interest in Having Localized Interests Decided at Home

Courts must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in a patent case "are not a fiction." *In re Samsung Elecs. Co.*, Nos. 2021-139, 2021-140, 2021 U.S. App. LEXIS 19522, at *20 (Fed. Cir. June 30, 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the*

---

[4] The Court is unable to find recent or comparable statistics in Defendants' cited Federal Circuit opinions that rebut Plaintiff's evidence. The Court notes the Federal Circuit's *In re Apple* opinion, wherein it states that the "NDCA and WDTX have historically had comparable times to trial for civil cases (25.9 months for NDCA versus 25.3 months for WDTX), and, most relevantly, NDCA has historically had a *shorter* time to trial for patent cases." 979 F.3d at 1343–44. However, without knowing the range of dates used to create the output, the Court must compare the statistics the Federal Circuit provided a year before Apaltek's transfer motion with the statistics provided in Asetek's motion. Since the *In re Apple* decision, this Court has conducted numerous patent trials that indicate reliance on Asetek's recent data is well-supported.

15

*events that gave rise to a suit.*'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). "Important considerations include the location of the injury, witnesses, and the Plaintiff's residence. *Def. Distributed v. Bruck*, 2022 WL 984870, at *12.

Apaltek contends that the NDCA has a local interest because "Asetek's U.S. headquarters and wholly owned subsidiary are in the [NDCA]." ECF No. 30 at 6. Furthermore, Apaltek cites to other declarations or briefing from prior litigation in the NDCA where Asetek stated the NDCA was a preferred forum and the center of gravity for the case. *Id.* at 6–8 (providing quotations from declarations and briefing in cases before the Middle District of Florida and Eastern District of Virginia). Furthermore, Asetek has asserted these and related patents in the Northern District of California a half-dozen times. *Id.* at 8.

Asetek adamantly disagrees and argues that Apaltek has failed to show that any events forming the basis for infringement occurred in the NDCA. ECF No. 37 at 3. For example, Apaltek fails to "contend that the design and/or development of the accused products occurred in the NDCA." *Id.* Additionally, the accused products are sold or offered for sale throughout the United States and neither venue has a particularly localized interest. *Id.* Instead, Asetek emphasizes Apaltek's reliance on the general presence of Asetek's sister company, Asetek USA, Inc. to conjure some local interest. *Id.* Asetek also defends the prior statements, arguing that they are "outdated" and predate significant reorganizations rendering the descriptions completely inapplicable even to Asetek USA, Inc. *Id.* at 4. Last, Asetek outlines the test for the local interest factor, stating "the local interest factor does not consider the transferee venue's purported interest in the *plaintiff* (here, Asetek). Rather, the relevant consideration is where '*the events that gave rise*

*to [this] suit*" occurred.'" *Id.* at 3 (citing *In re Apple Inc.*, 979 F.3d at 1345) (emphasis in original); *In re Google LLC*, 855 F. App'x 767, 768 (Fed. Cir. 2021)).

In reply, Apaltek argues that where a party's principal place of business is located indeed creates a particularized interest. ECF No. 45 at 1 (citing *Corel Corp. v. Dell Inc.*, 2013 WL 12091649, at *4 (W.D. Tex. July 25, 2013)). And, because "Asetek's U.S. headquarters and only U.S. office is in San Jose, California," the NDCA has a local interest. *Id.*

"This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple Inc.*, 979 F.3d at 1345 (citing several cases stating same). Apaltek clearly highlights that neither party has a connection to the WDTX. It is also clear that the only connection either foreign party has is through Plaintiff's subsidiary in the NDCA. However, Asetek USA, Inc. is not a party to this litigation; nor has Apaltek given a compelling reason for why Asetek USA, Inc.'s general presence in the NDCA creates a local interest in the transferee forum. A general presence is insufficient to create a local interest. *Id.* Moreover, Apaltek cannot point to any "events that give rise to the suit." The accused products were not designed, developed, or tested in either the transferor or transferee forum. And while Apaltek names several Asetek employees that work in the NDCA, the instant lawsuit does not "call[] into question the work and reputation of [those] individuals residing" in the NDCA. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).

Accordingly, while the only connection either party may have emanates from a subsidiary in the transferee forum, this is not the appropriate test. Without a clear indication of the subsidiary's impact on the litigation creating a local interest, this Court's analysis remains restricted to the parties at hand. Neither party maintains a presence in either the WDTX or NDCA; the accused

products were not designed, developed, or tested in the NDCA; neither forum hosts individuals whose work will be called into question because of the lawsuit; and no events that gave rise to this suit occurred in the WDTX or NDCA. *See In re Apple*, 979 F.3d at 1345. This factor is neutral.

### iii. Familiarity of the Forum with the Law That will Govern the Case

Apaltek initially argued that this factor favors transfer because the NDCA has familiarity with *this technology* and *these patents-in-suit* due to past litigation. ECF No. 30 at 8. However, given Asetek's response and note that federal patent law is not "exceptionally arcane," *see* ECF No. 37 at 4 (citing *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 68 (2013)), Apaltek appears to agree that this factor is neutral. ECF No. 45 at 1 ("Patent law is uniform nationwide and there are no issues relating to conflict of laws or the application of foreign law. All other factors favor Northern California."). The Court also finds that both the transferor and transferee forums are sufficiently familiar with the law governing this case to render this factor neutral.

### iv. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

Similar to the preceding factor, Apaltek initially argued that this factor favored transfer because the NDCA "is better situated to evaluate issues relating to judicial estoppel and inconsistent positions that Asetek may take, considering that it has construed the terms of the '362, '764, and related patents multiple times and presided over a trial of the same '362 and '764 patents." ECF No. 30 at 9. Having reviewed the response of Asetek (ECF No. 37 at 6) and the applicable law, Apaltek now agrees that this factor is neutral. ECF No. 45 at 1. The Court agrees.

## C. Weighing of the Factors

Here, the center of gravity is clearly the NDCA. Little to nothing ties this case to the WDTX. In contrast, the NDCA has hosted these same or related patents for the past nine years.

And even though Plaintiff underwent significant reorganizations, it consistently sought adjudication on these patents in the NDCA. The Court finds that the NDCA is a clearly more convenient forum.

| Factor | The Court's Finding |
| --- | --- |
| Relative ease of access to sources of proof | Neutral |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| Cost of attendance for willing witnesses | Weighs slightly in favor of transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Weighs strongly in favor of transfer |
| Administrative difficulties flowing from court congestion | Weighs slightly against transfer |
| Local interest | Neutral |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

## IV. CONCLUSION

Having reviewed all of the private and public interest factors, the Court finds that Apaltek has met its burden to show that transfer is clearly more convenient. Defendant Apaltek's Motion to Transfer Venue under 28 U.S.C. § 1404(a) to the Northern District of California (ECF No. 30) is hereby **GRANTED**.

SIGNED this 6th day of May, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE